UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

  v.                                     Case No.: 6:24-cr-137-CEM-RMN

**JORDANISH TORRES-GARCIA,**
**ET. AL.,**

       **Defendant.**
_____/

**DEFENDANTS' JOINT MOTION TO COMPEL GOVERNMENT COMPLIANCE WITH THE NATIONAL ESI PROTOCOL AND TO <u>OTHERWISE REMEDY DISCOVERY DEFICIENCIES</u>**

Defendants, through their respective undersigned counsel and pursuant to the Fifth and Sixth Amendments of the United States Constitution, Federal Rule of Criminal Procedure 16, Rule 16.1, and the Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases ("National ESI Protocol"), and moves this Court to enter an order compelling the Government to comply with its obligations for producing discovery materials that are within the ambit of the National ESI Protocol. In support:

1

## I.  INTRODUCTION

Since the appointment of the Coordinating Discovery Attorney (CDA), the defense has received over 5.64 terabytes of discovery from the Government.[1] A preliminary review revealed 1,203 issues, including infected files, missing and hidden data, erroneous cover letters, and improperly structured discovery sets. The discovery materials produced by the Government are nothing more than a "document dump" that is not indexed or categorized in any meaningful way.  The Government's failure to produce discovery material in an organized or searchable format is tantamount to a denial of Due Process because it impedes full access to the global discovery; each Defendant cannot determine what evidence exist to support the Government's charges.  It is well-settled that the Government may not satisfy its discovery obligation by dumping a large volume of undifferentiated material on a defendant; instead, the Government must identify with specificity the materials that it intends to use in case-in-chief at trial.  *United States v. Gossjankowski,* 669 F. Supp.3d 1, 7 (D.C. Cir. 2023). In *U.S. v. Anderson*, 416 F. Supp. 2d 110, 114 (D.D.C. 2006) the Court stated,

> Given the enormous volume of material produced in

---

[1] Prior to the CDA's appointment counsel thought they had received as much as 14 TB of discovery. The CDA and her staff quickly identified a significant volume of duplicative discovery, thus proving the value of her technical expertise in reducing costs at the onset of her involvement in the matter.

2

> this case and defendant's limited resources, it is apparent that requiring defendant's counsel to peruse each page of the materials at issue here - in effect, to duplicate the work of document review presumably already done by the *government* - would materially impede defendant's counsel's ability to prepare an adequate defense or, as repeatedly emphasized by defendant's counsel at oral argument, to evaluate **[*7]** meaningfully the *government*'s plea offer and to engage in fruitful plea negotiations.

Here, the Government's noncompliance with the National ESI Protocol, on a case that involves an indisputably large set of discovery and that the Administrative Office of the U.S. Courts has agreed warranted the appointment of a Coordinating Discovery Attorney (CDA), has prejudiced the defense's ability to review discovery efficiently and infringes on the Defendants' rights to effective assistance of counsel.

Despite an initial meet and confer, the Government has failed to organize its productions or cooperate meaningfully with the CDA's efforts to help Defendants manage and identify the evidence that may be used against them.

Therefore, the defense respectfully requests that the Court order the Government to correct these deficiencies, comply with the ESI Protocol, and take steps to reduce further costs caused by the Government's noncompliance with standard protocols that govern the production of electronic discovery on

3

federal criminal cases nationwide.

## II. GOVERNMENT'S VIOLATION OF NATIONAL ESI PROTOCOL

The National ESI Protocol, developed by the Joint Electronic Technology Working Group (JETWG), outlines discovery standards agreed upon by federal prosecutors, defense attorneys, judges, and court administrators. The Government has failed to follow multiple sections of the protocol, including:

### A. Failure to Conduct a Meaningful Rule 16.1 Meet and Confer (Strategies §5)

The CDA's initial meet and confer with the Government occurred on January 17, 2025. Despite further outreach, the Government has failed to continue meaningful engagement or establish a designated discovery coordinator. This violates the recommendation in §5 that parties engage in ongoing dialogue to manage discovery.

### B. Failure to Provide Usable Indexes or Table of Contents (§5b)

The Government produced a text file directory totaling over 44,000 pages and an incomplete Bates index, both of which are inaccessible or improperly formatted. As per Protocol §5b, a table of contents is critical to avoiding "discovery disputes, unnecessary expense, and undue delay."

### C. Incomplete Load Files and Metadata (§6)

The Government failed to provide complete load files needed to load the

4

Government's production onto a searchable database. The organization of many of the files in the Government's production portray sets of folders that reveal the existence of load file collections. Presuming the Government has loaded the data onto their own database for their management and review, the defense is entitled to request and receive such load files. Load files are essential for document review, as they include objective metadata and allow for efficient navigation. If not provided load files, the defense must generate their own, which increases costs and creates duplicative efforts.

### D. Duplicative Forensic Extractions (§6d)

The CDA has identified that over 75% of the global discovery consists of device extractions produced in multiple formats, without clarification of duplication i.e. whether the excess versions are partial or in full. As each format presents a unique version of the same data, these files cannot be de-duplicated via software and, without Government guidance as to which files, specifically, are duplicative, must be manually reviewed as unique files.

### E. Missing and Inadequate Cover Letters (§7)

The Government has repeatedly failed to provide cover letters identifying their global discovery contents and access instructions, contrary to Protocol §7.

5

**F. Failure to Informally Resolve Issues (§9)**

Despite repeated efforts, the majority of the CDA's requests for clarification and issue resolution have been ignored. Protocol §9a requires parties to confer in good faith and include technically proficient individuals.

The outlined failures demonstrate that the Government has failed to follow the National ESI Protocol, a Jointly-Endorsed Judicial Standard.[2] These deficiencies impose a discovery burden that runs contrary to both Rule 16 of the Federal Rules of Criminal Procedure and the goals of Rule 16.1, which emphasize the collectively beneficial need for efficient discovery dissemination, coordination and collaboration.

## III. CONSTITUTIONAL VIOLATIONS: DUE PROCESS AND EFFECTIVE REPRESENTATION

The Government's actions violate the Defendant's Fifth Amendment right to Due Process and Sixth Amendment right to effective assistance of counsel. Under the Fifth Amendment, the Defendants are entitled to Due Process of law, which includes the opportunity to identify the evidence that

---

[2] The National ESI Protocol, developed by JETWG and endorsed by the Department of Justice, the Defender Services Office, and the Judicial Conference, sets out widely accepted guidelines for ESI discovery. Courts frequently rely on the Protocol as a best practice framework for federal criminal discovery. See: JETWG, *Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases*, 2012.

6

may be used against the Defendants. In order to identify such evidence, Defendants must be provided a meaningful opportunity to review and use discovery in their defense. Courts have recognized that voluminous, unindexed, or inaccessible discovery violates that right, even where the Government nominally "produces" the material.

In *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) rvs'd in part on other grounds, 176 F.3d 517, 336 U.S. App. D.C. 91 (D.C. Cir. 1999), the Court held that "the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack".

Here, the CDA's preliminary review of the Government's 5.64 terabyte production uncovered **over 1,203 technical and organizational issues**, including:

- Infected or hidden files,
- Missing and improperly indexed materials,
- Discovery produced in duplicative forensic formats,
- A corrupt 44,000-page directory listing,
- And the failure to provide Bates logs or metadata necessary to navigate the production.

7

This chaotic discovery environment hinders the defense teams' ability to locate exculpatory material, identify relevant themes, or challenge the Government's evidence—core requirements of Due Process. As the Supreme Court stated in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), Due Process is violated where the Government suppresses evidence "favorable to an accused." Even if the evidence exists in the production, if it is buried in a disorganized, non-navigable trove of data *Brady* obligations have not been satisfied.

Under the Sixth Amendment, Defendants have the right to the effective assistance of counsel, which necessarily includes the time and tools to prepare an adequate defense. Defense counsel cannot meet their Constitutional obligation if time and resources are consumed by attempting to reformat, reorganize, and decipher an unusable and basically incomprehensible discovery production.

In the present matter, counsel, the CDA, her staff, and third-party vendors have spent extraordinary hours trying to make comprehensive sense of an incoherent global production, and despite the CDA's and defense counsel's diligence. Given the nature of the production, they have to date yet been able to complete that task. Consequently, defense counsel continues to wade through incomprehensibly organized discovery materials, rather than

8

focusing on trial preparation, mitigation, and the review of inculpatory or exculpatory information. This diverts resources away from legal strategy, client communication, and investigation, resulting in prejudice to all of the Defendants. Courts have held that the right to counsel requires reasonable investigations and making informed strategic choices. The Government's deficient discovery production is impairing the Defendants' rights here. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (effective assistance of counsel includes "reasonable investigations" and the ability to make "informed choices").

## IV. UNNECESSARY BURDEN ON CJA RESOURCES

The Government's discovery practices here significantly increase costs to the judiciary, particularly under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. The absence of load files and indexing in a meaningful way forces the defense teams to use billable hours and external vendors for tasks that could have been avoided or reduced with proper production. Due to the number of co-defendants indicted and the number of CJA attorneys appointed in this case, the many hours devoted to the process of trying to decipher discovery has exponentially and unnecessarily increased the costs.

As this Court is aware, CJA funds have run out and been completely depleted for this fiscal year and it is only mid-July. Absent Congressional

intervention, CJA counsel, their experts and vendors will not be paid until after October 1, 2025, upon the next fiscal year. This budgetary crisis punctuates this Court's duty to ensure CJA funding is fair and necessary.

## V. Judicial Enforcement Is Warranted to Prevent Further Prejudice and Delay

Counsel and the CDA have made good-faith efforts to resolve these issues informally, in accordance with the Protocol's dispute resolution recommendations (Section 9), yet the Government has failed to meaningfully engage. The cumulative impact of the Government's failure to organize discovery or to communicate effectively produces delay, inefficiency, and prejudice to the defendants' rights.

The cost to and time lost for the defense are significant, and entirely avoidable. Courts have inherent authority to regulate discovery and enforce due process compliance. See generally *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008).

## VI. RELIEF REQUESTED

The defense requests that this Court:

1. Order the Government to comply with the National ESI Protocol, engage in meaningful discussions with the CDA, and perform the following tasks:

10

- Re-produce all global discovery in an organized, indexed, and metadata-rich format;
- Deliver complete load files and usable Bates indexes;
- Provide cover letters or other memoranda that summarize the contents for each production;

2. Order a formal Rule 16.1 meet and confer with Government representatives knowledgeable of ESI discovery protocols;

3. Order the Government to assign a Government ESI coordinator with sufficient technical expertise and authority to oversee discovery in this matter;

4. Grant any further relief that the Court deems just and proper in light of the Governments systemic discovery violations and the Court's determination to facilitate preparation for trial, per Rule 16.1(b).

**Dated: July 21, 2025**

Respectfully submitted,

*/s/ D. Todd Doss*
D. Todd Doss, Esq.
Florida Bar No. 0910384
P.O. Box 915065
Longwood, FL 32791
Telephone: 386-965-7232
E-Mail: dossdt1@gmail.com

*/s/ Roger Weeden*
Roger L. Weeden
Florida Bar No. 290106
605 East Robinson Street
Suite 250
Orlando, FL 32803
Telephone: 407-894-9004
E-Mail: rlweeden@aol.com

11

*/s/ Bjorn Erik Brunvand*
Bjorn Erik Brunvand, Esq.
Brunvand & Wise Law Group
615 Turner Street
Clearwater, FL 33756
Office: 727-446-7505
Fax: 727/446-8147
Email: bjorn@acquitter.com
Florida Bar No. 831077
Attorney for Rodriguez-Bonilla

**/s/Andrew J. Chmelir**
Andrew J. Chmelir, Esq.
Jacobson, Chmelir & Ferwerda
Florida Bar No. 0087254
351 E SR 434, Suite A
Winter Springs, FL 32708
Tel. (407) 327-8899
ajchmlir@cs.com
Attorney for Sonic Garcia-Torres

*/s/ Charles M. Greene*
Charles M. Greene, Esq.
Charles M. Greene, P.A.
55 Pine Street
Orlando, FL 32801
Office: 407-648-1700
Fax: 407-648-0071
Email: cmg@cmgpa.com
Florida Bar No. 938963
Attorney for Rodriguez-Bonilla

*/s/ Susan M. Malove*
Susan M. Malove, B.C.S.
Florida Bar No. 72126
390 N. Orange Ave. Suite 2300
Orlando, FL 32801
Telephone: (407) 374-2727
Email: susan@malovelaw.com
Attorney for Romero-Soto

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that undersigned electronically filed the foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 21st day of July 2025.

*/s/ D. Todd Doss*
Attorney for Defendant

12