**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**                       **Case: 6:24-CR-137-CEM-RMN**

**vs.**

**JORDANISH TORRES-GARCIA**

      **Defendant.**

_____/

**Mr. Torres-Garcia's Response in Opposition to the Government's Motion for a Scheduling Order and Trial Date and Request for Thirty-Day Meet-and-Confer Period**

One week after filing its notice of intent to seek the death penalty, the Government asks the Court to adopt a comprehensive capital scheduling order and set trial for June 7, 2027. Doc. 501. After receiving the Government's proposal, undersigned counsel met with the Government's lead counsel to discuss the proposed schedule and requested a thirty-day period for the Government and the five defense teams to meet and confer before submitting scheduling proposals to the Court. The Government declined that request and maintained that its proposed comprehensive order and June 7, 2027, trial date should be adopted.

1

Mr. Torres-Garcia therefore opposes the Government's motion. He does not presently ask the Court to select between competing comprehensive schedules or to leave the case without deadlines. He requests a limited and orderly procedure: thirty days for the parties to confer regarding the structure and timing of the case, followed by a joint filing identifying agreed provisions and presenting competing dates or language for matters the parties cannot resolve.

The requested process is particularly appropriate in a five-defendant capital prosecution authorized only last week. It would permit the Court to decide actual and narrowed disputes based upon informed proposals from all parties, rather than adopt a comprehensive schedule developed without input from the defense teams before teams have completed a post-authorization assessment.

**ARGUMENT**

**I.    The Parties' Conference Confirmed the Need for a Court-Directed Thirty-Day Scheduling Process.**

The Government relies upon 18 U.S.C. § 3161(a), which contemplates that a trial date will be set after consultation with counsel for the defendant and the Government. Doc. 501 at 5. Undersigned counsel has now conferred with the Government's lead counsel regarding the proposed order.

During that conference, Mr. Torres-Garcia did not ask the Government to agree to an indefinite delay or even to agree immediately upon an alternative trial date. He requested thirty days for needs and to evaluate the Government's proposal, consult with the respective defense teams, identify common and defendant-specific needs, and submit a joint filing containing agreed dates and focused competing proposals.

The Government declined that request and maintained that the Court should adopt its comprehensive schedule, a schedule that fails to include *any* input from the five defense teams. The conference therefore narrowed the dispute. The question presently before the Court is not whether the case should move forward. All parties agree that it should. The question is whether a comprehensive schedule should be imposed immediately after authorization, or whether the parties should first be given thirty days to develop informed proposals and identify the matters that require judicial resolution.

The latter approach is more likely to produce a durable schedule. It would allow counsel to address the sequencing of discovery, motions, intellectual disability litigation, Rule 12.2 procedures, expert disclosures, jury selection, and trial preparation. It would also permit the parties to distinguish deadlines that can properly apply to all defendants from matters that require defendant specific treatment.

3

The defense's request is limited, concrete, and designed to assist the Court. A thirty-day consultation will not impede ongoing preparation. It will reduce the likelihood of repeated requests to amend deadlines entered before the parties had sufficient information to assess them.

## II. The Age of the Case Does Not Establish That it is Ready for an Accelerated Capital-Trial Schedule.

The Government emphasizes that the charged conduct occurred in April 2024, that Mr. Torres-Garcia has been represented continuously, and that learned counsel was appointed in May 2024. Doc. 501 at 5. The defense does not dispute those facts. These facts demonstrate continuity and diligence, but they do not establish that the case is prepared for a capital trial.

Before authorization, the defense was required to litigate the existing charges while also performing the substantial work demanded by the Department of Justice's capital-review process. The defense presented mitigation to the United States Attorney's Office on October 31, 2025, and to the Department's Capital Case Review Committee on June 8, 2026.

This work was directed toward a discretionary charging decision. It was not the equivalent of preparing a bifurcated capital trial. Authorization activated materially different obligations, including litigation of the death notice and aggravating factors; intellectual disability litigation and Rule 12.2 procedures; investigation of penalty phase aggravation and rebuttal;

4

development of admissible and corroborated mitigation evidence; capital jury selection preparation; and integration of guilt phase and penalty phase strategy.

The defense has not been idle. But preparing to persuade prosecutors not to authorize death is not the same as preparing every guilt and penalty phase issue for adjudication before a jury.

## III.    The Government's Description of the Discovery Does Not Account for its Condition or the Work Required to Make It Usable.

The Government states that substantial discovery has been provided throughout the case and cites the prior litigation concerning the Government's electronic production. Doc. 501 at 5. This characterization confuses production with meaningful review.

The discovery previously became the subject of a joint defense motion seeking the Government's compliance with the National ESI Protocol and relief from asserted production deficiencies. The Government produced nearly 20 terabytes of material; the defense described the production as a "document dump." *See* Doc. 406 at 1–2. The Court denied the requested relief and declined to require the Government to reorganize the material or prepare comprehensive load files.

This ruling determined what additional organizational work the Government could be compelled to perform. It did not make the production

5

organized, deduplicated, translated, indexed, or substantively reviewed. The organizational burden remained, and has been borne, by the defense and the Court appointed Coordinating Discovery Attorney.

The production received by Mr. Torres-Garcia's team initially appeared to contain approximately 14 terabytes of data. After processing and deduplication by the CDA, the reviewable data set has been reduced to approximately 1.67 terabytes. This reduction demonstrates the extraordinary duplication within the production and the substantial preliminary work required before counsel could identify the actual universe of evidence.

The remaining discovery includes more than 1,000 hours of Spanish-language audio, including Title III intercepts, and more than 140 hours of video, much of it in Spanish. At ordinary playback speed alone, that represents more than 1,140 hours of recordings—more than twenty-eight 40-hour workweeks for one reviewer before allowing time for translation, transcription, replay, indexing, speaker identification, factual investigation, client consultation, legal analysis, or motion preparation.

The Court's prior ESI ruling does not eliminate the scheduling consequences of this burden borne by the defense teams. In acknowledging the effect of extensive discovery, the Court cited *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003), which observed that when defendants lack

sufficient time to sort through voluminous discovery, the appropriate course is to request additional time. Doc. 406 at 3–4.

## IV.    The Government's Initial Deadlines Demonstrate Why Conferral is Necessary.

The proposed order sets August 14, 2026, for completion of nonexpert Rule 16 discovery and August 28, 2026, only fourteen days later, for all dispositive and nondispositive motions not otherwise addressed. Doc. 501-1 at 1. In that fourteen day interval, the defense would be required to determine whether the production is complete; process and review any newly produced material; identify resulting discovery and evidentiary issues; investigate the factual significance of the material; consult with the client and defense team; identify and research suppression, severance, *Bruton*, Title III, evidentiary, and constitutional issues; and prepare every dispositive and nondispositive motion not separately listed. Fourteen days is facially inadequate to accomplish all of these tasks, much less any additional tasks not listed. The breadth of the August 28, 2026, provision also creates the risk that it may later be invoked to bar motions that could not reasonably have been identified before discovery review and investigation are complete.

Further compounding the problem, the Government's proposed discovery deadline sets a date for Rule 16 material but states only that *Brady* material will be disclosed "by the time required by the applicable law." Doc. 501-1 at 1.

But this fails to consider the other substantial disclosure obligations required of the Government, including, for example, *Giglio*, Jencks, aggravation, and rebuttal disclosures. Before corresponding defense deadlines are imposed, the parties should address the anticipated timing of *Brady*, *Giglio*, cooperator, impeachment, aggravation, rebuttal, expert source, and Jencks Act material, as well as the effect of later disclosures on corresponding defense deadlines. These are precisely the matters a structured meet-and-confer process should address.

## V.    The Case Presents Substantial Defendant Specific Capital Litigation That the Government's Motion Does Not Address.

Mr. Torres-Garcia anticipates litigating intellectual disability as a categorical constitutional bar to execution. That litigation will require development of historical and current intellectual functioning evidence, adaptive functioning, developmental onset, school and special-education records, collateral witnesses, linguistic and cultural considerations, expert methodology, Government testing, and rebuttal.

The Government's proposed order requires any claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), to be raised by January 4, 2027, while acknowledging that a separate litigation schedule would thereafter be necessary. Doc. 501-1 at 2. This acknowledgment on its own illustrates why

8

the Court should first identify the claim, evidence, experts, and procedures involved before imposing a comprehensive timetable.

The fact capital cases require time is not a generalized assertion here. There are concrete, defendant-specific matters that affect the sequencing of investigation, expert work, disclosure, motion practice, and trial preparation. Many cannot be discussed here due to work product, privilege, and strategy concerns. However, within the framework the Defense proposes these concerns can be protected and later addressed with the Court *ex parte*, if necessary.

## VI.    The Mitigation Presented During the Authorization Process Does Not Substitute for Penalty Phase Preparation.

The mitigation developed for the Department's authorization process was directed to prosecutors exercising discretionary charging authority. It could appropriately be thematic, selective, and supported through reports, proffers, summaries, and counsel's professional representations.

A capital jury presentation is qualitatively different. It must be comprehensive, corroborated, and admissible. The presentation must be adduced through prepared witnesses, supported by experts using complete and reliable foundations, and understandable to lay jurors. These witnesses must be prepared for cross-examination. The presentation must be responsive to aggravation and rebuttal; and integrated into a coherent life-history presentation.

9

The mitigation presented to DOJ was sufficient to permit prosecutors to exercise charging discretion. It was not, and was never intended to be, the complete evidentiary presentation required to litigate intellectual disability, withstand adversarial expert scrutiny, and persuade a death-qualified jury after conviction.

The Supreme Court has repeatedly recognized that strategic capital-mitigation decisions must rest upon a sufficiently thorough investigation. See *Wiggins v. Smith*, 539 U.S. 510, 521–24, 527–28 (2003); *Rompilla v. Beard*, 545 U.S. 374, 387–90 (2005); *Williams v. Taylor*, 529 U.S. 362, 395–96 (2000). The Government's proposed scheduling order does not demonstrate that its proposed deadlines reasonably accommodate that work.

## VII. The Government has not Shown That June 7, 2027, is a Reasonable Case Specific Trial Date.

The Government estimates that its case will last three to four weeks and involve approximately sixty witnesses. It has no estimate for the number of defense witnesses or the time required for any defense case. Doc. 501 at 5. This concession confirms that the Government does not possess the information necessary to estimate the full trial or preparation required.

The Government relies on general speedy-trial principles and *United States v. Wilk*, 452 F.3d 1208, 1222 (11th Cir. 2006). But a determination that a death notice provided sufficient advance notice in the circumstances of

10

another case does not establish that eleven months is sufficient to investigate and try this prosecution, process its multilingual discovery, litigate intellectual disability, prepare neurological and trauma evidence, and coordinate the needs of the remaining defendants.

The defense does not contend that another federal capital schedule mechanically controls this case. But a cursory review of recent federal capital cases reflect substantially longer intervals between authorization and major litigation deadlines.

| Case | Notice of Intent to Seek Death Penalty (NOI) | Discovery Motions | Constitutional Death Penalty Motions |
|---|---|---|---|
| *U.S. v. Petty*, 1:25-cr-123 (D. Co.) | 04/09/2025 (Doc. 7) | 07/01/2026, 15 mos. after NOI (Doc. 205) | 10/02/2026, 18 mos. after NOI (Doc. 205) |
| *U.S. v. Reed*, 5:25-cr-156 (WDOK) | 05/07/2025 (Doc. 42) | 09/25/2026, 16 mos. after NOI (Doc. 159) | 11/20/2026, 18 mos. after NOI (Doc. 159) |
| *U.S. v. Franklin* and *U.S. v. Smith*, 6:24-cr-167 (EDOK) | 07/09/2025 (Docs. 102, 103) | N/A | 02/01/2027, 18 mos. after NOI (Doc. 243) |
| *U.S. v. Cox*, 7:25-cr-91 (SDNY) | 10/23/2025 (Doc. 103) | 12/07/2026, 14 mos. after NOI (Doc. 136) | 09/15/2026, 11 mos. after NOI (Doc. 136) |
| *U.S. v. Flores-Tavarez*, 3:24-cr-133 (DPR) | 11/14/2025 (Doc. 189) | 01/12/2027, 14 mos. after NOI (Doc. 224) | 02/01/2027, 15 mos. after NOI (Doc. 224) |

11

And courts have frequently used tiered schedules rather than imposing a complete path to trial at the outset. *See, e.g., U.S. v. Petty*, 1:25-cr-123 (D. Co.), Doc. 205; *U.S. v. Cox*, 7:25-cr-91 (SDNY), Doc. 136; *United States v. Simmons*, 1:25-cr-00071 (WDNC), Doc. 35.

The Government identifies no case specific exigency requiring trial on June 7, 2027. It does not identify a defendant demanding that date, deteriorating evidence, an unavailable witness, or another circumstance requiring the Court to select a firm trial date before meaningful consultation occurs.

## VIII. The Requested Thirty-Day Process Will Advance, Not Impede, Case Management.

Mr. Torres-Garcia proposes that the Court:

1.    allow the parties thirty days following the status conference to meet and confer regarding a scheduling and case-management order;

2.    require lead counsel for the Government and each defense team to participate;

3.    direct the parties to identify all provisions and dates upon which they agree;

4.    require competing dates or proposed language, with concise explanations, for unresolved matters;

12

5.      permit defendant-specific proposals where uniform deadlines are inappropriate; and

6.      require a single joint submission for the Court's consideration as to agreed issues and deadlines.

The parties can address the schedule in logical tiers, beginning with discovery, disclosure obligations, ESI procedures, protective-order issues, and general legal matters that do not depend upon defendant specific investigation. Later tiers can address discovery-based motions, Title III litigation, severance, intellectual-disability procedures, Rule 12.2 matters, experts, jury selection, and trial-dependent deadlines.

This process will not suspend productive work. Discovery review, translation, investigation, expert consultation, mitigation development, legal research, and preparation will continue. The requested process will narrow disputes and provide the Court with a more reliable basis for entering a durable order.

## IX.    The Limited Relief Requested Does Not Require the Court to Resolve Each Proposed Deadline Now.

This response identifies several substantial concerns with the Government's proposal to demonstrate why immediate adoption would be premature. Mr. Torres-Garcia does not ask the Court to adjudicate every proposed deadline at the upcoming status conference.

13

He requests thirty days for the parties to complete the scheduling process that has begun, develop informed positions, and present the Court with a joint submission identifying agreed provisions and focused disputes. Mr. Torres-Garcia preserves his objections to the individual deadlines, disclosure provisions, expert procedures, Rule 12.2 procedures, jury-selection provisions, and proposed trial date contained in the Government's motion and exhibit.

If the Court is inclined to decide the Government's comprehensive proposal without allowing the requested thirty-day process, Mr. Torres-Garcia requests an opportunity to submit a complete defense scheduling proposal and additional response addressing the individual provisions before the Court rules.

## CONCLUSION

Mr. Torres-Garcia requests that the Court defer ruling on, or deny without prejudice, the Government's motion and:

1. allow the parties thirty days to meet and confer regarding a scheduling and case-management order;

2. require the parties to file a joint submission identifying agreed provisions and presenting competing dates or language for unresolved matters;

3. permit defendant-specific proposals where uniform deadlines would be inappropriate; and

14

4.    defer selection of a firm trial date until the Court has received and considered that submission.

Respectfully submitted,

/s/ *D. Todd Doss*

D. Todd Doss, Esq.
Florida Bar No. 0910384
Assistant Federal Defender
Federal Death Penalty Unit
411 Bonneville Avenue
Suite 250
Las Vegas, NV 89101
Telephone: 702-388-6577
E-Mail: Todd_Doss@fd.org

*/s/ Roger Weeden*

Roger L. Weeden
Florida Bar No. 290106
605 East Robinson Street
Suite 250
Orlando, FL 32803
Telephone: 407-894-9004
E-Mail: rlweeden@aol.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the undersigned electronically filed the foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 16th day of July 2026.

/s/ *D. Todd Doss*

Attorney for Defendant

15