UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORDANISH TORRES GARCIA,<br><br>Defendant. | Case No. 6:24-CR-137-CEM-RMN |

**JOINT DEFENSE NOTICE OF FILING PRIMARY AND ALTERNATIVE PROPOSED SCHEDULING ORDERS AND MEMORANDUM IN SUPPORT**

Pursuant to the Court's direction at the July 17, 2026, status conference, the Defendants submit proposed scheduling orders following the parties' meet-and-confer process. The Defendants principally request that the Court adopt the Initial Scheduling and Case-Management Order attached as Exhibit A. That proposal establishes concrete deadlines for the matters that can reasonably be scheduled at this stage of the case and provides for later scheduling of discovery-dependent, expert, defendant-specific, and trial-related matters as the necessary predicate work is completed.

The Defendants have also submitted as Exhibit B an Alternative Comprehensive Scheduling and Case-Management Order. The Defendants do not believe that fixing every deadline through trial is the preferable way to manage this case at this stage. Nevertheless, if the Court concludes that a trial

date and comprehensive schedule should now be established, Exhibit B provides an alternative schedule culminating in jury selection on October 1, 2029. Unlike the Government's proposal, that date is not selected first with every other deadline then compressed to fit it. It results from allowing reasonable periods for the substantial work that must occur before this case can be responsibly tried.

Pursuant to the court's direction, counsel conferred with the government and reached no agreement. Each defense team, other than co-defendant bonilla's has indicated agreement and wished to join with this Joint Defense Notice of Filing Primary and Alternative Proposed Scheduling Orders and Memorandum in Support. Mr. Bonnila's counsel was contacted and has not yet stated their position. Mr. Greene had indicated a response was forthcoming, however, at the time of this filing no response has been received. Undersigned counsel decided to file now to provide the court with time to review the proposed scheduling orders prior to Wednesday. August 19, 2026, the date of the upcoming status conference.

## MEMORANDUM IN SUPPORT

### A. A Tiered Scheduling Order Provides the Most Reliable Means to Move This Case Forward.

The issue is not whether this case should proceed under meaningful deadlines. It should. The issue is whether the Court should attempt now to predict the timing of every stage of a multi-defendant capital prosecution

through trial, or instead establish firm deadlines for the work that can presently be scheduled and set later deadlines as the matters upon which they depend are completed.

The Defendants submit that the latter approach is more likely to result in an orderly and durable schedule.

The Government's proposed order takes the opposite approach. It selects June 7, 2027, as the trial date and requires essentially every stage of capital litigation to be completed in the next ten months. Under that proposal, nonexpert discovery would be completed on August 14, 2026; all dispositive and nondispositive motions not otherwise addressed would be due fourteen days later; constitutional capital motions would be due October 2; jury-selection procedures would be addressed in November; Rule 12.2 notice and any *Atkins* claim would be due January 4, 2027; all expert reports would be disclosed February 15; expert challenges would follow eleven days later; and by April 16 the parties would be required to submit jury instructions, motions in limine, guilt- and penalty-phase witness and exhibit lists, and the defense list of proposed mitigating factors. Jury selection would begin in June, 2027.

That schedule assumes that discovery review, factual investigation, translation, suppression litigation, intellectual-disability litigation, mitigation investigation, expert development, aggravation investigation, jury-selection preparation, and trial preparation can proceed according to predetermined

dates regardless of whether the preceding work has been completed. The record in this case demonstrates otherwise.

The Speedy Trial Act expressly permits the Court to account for those realities. In determining whether an ends-of-justice continuance is appropriate, the Court considers whether the case is sufficiently unusual or complex because of the number of defendants, nature of the prosecution, or novel factual or legal issues, so that adequate preparation cannot reasonably occur within ordinary time limits. 18 U.S.C. § 3161(h)(7)(B)(ii). The statute separately directs consideration of whether counsel would otherwise be denied the reasonable time necessary for effective preparation despite the exercise of due diligence. *Id.* § 3161(h)(7)(B)(iv).

Exhibit A is designed around those principles. It does not leave the case unscheduled. It establishes deadlines for discovery status, multimedia review, presently identifiable discovery disputes, aggravation disclosure, and legal and capital motions that do not depend upon completion of factual investigation or expert development. It requires periodic status reports and establishes a defined mechanism for the parties to return to the Court with the next tier of deadlines. What it does not do is impose deadlines for matters whose timing presently depends upon work that has not yet occurred.

### B. Time is Needed to Adequately Review Substantial Discovery.

#### 1. The discovery requires substantial work before discovery-dependent motion practice can responsibly be completed.

The Government has previously emphasized that discovery has been produced throughout the life of this case. The defense does not dispute that discovery was transmitted to the defense and the Coordinating Discovery Attorney over time. But the date on which electronic files were transmitted does not answer the present scheduling question.

The condition of this production has already been litigated. The Government produced approximately 14 terabytes of discovery, and the defense moved to compel compliance with the National ESI Protocol and other relief concerning the organization and functionality of that production. The Court denied that motion and declined to require the Government to reorganize the discovery or prepare comprehensive load files. Doc. 406.

That ruling determined what additional organizational work the Government could be required to perform. It did not eliminate the work necessary to make the discovery susceptible to meaningful defense review. That work remained with the defense teams and the Court-appointed Coordinating Discovery Attorney.

The significance of that work can be seen in the subsequent organizational work. What initially appeared to Mr. Torres-Garcia's team to

include approximately fourteen terabytes of material was reduced through processing and deduplication by the CDA to approximately 1.67 terabytes. The remaining material nevertheless includes approximately 1,000 hours of primarily Spanish-language audio and approximately 143 hours of video. As previously explained to the Court, the recordings alone amount to more than 1,140 hours of playback—more than twenty-eight forty-hour workweeks for one person merely to play the material once, before accounting for transcription, translation, replay, speaker identification, indexing, investigation, consultation with the client, legal analysis, or motion preparation.

The defense is attempting to address this problem in a manner that is both thorough and economical. With the assistance of the CDA, the defense is pursuing machine-assisted transcription and translation as an initial means of reviewing the voluminous multimedia discovery. If successful, that process should allow counsel to search the resulting text, obtain an initial understanding of the recordings, identify potentially material communications, and substantially narrow the universe of recordings requiring more expensive human translation and verification.

The process is a review tool. It is not a substitute for reliable translation where accuracy matters. Machine-generated transcripts and translations necessarily have limitations. Speakers may not always be correctly

differentiated, language may be inaccurately captured, and portions whose meaning becomes material to suppression litigation, factual investigation, cross-examination, or trial will require review against the underlying recording and, where appropriate, verification by a qualified human translator.

The precise implementation and performance of this developing technology are also not entirely within defense counsel's control. For that reason, the defense does not propose that discovery-dependent deadlines simply begin running from the date on which the Government states that it previously completed production. Exhibit A instead provides a mechanism for the Court to receive information concerning the status of the process, permits the defense a meaningful period to use the resulting materials for substantive review, and preserves later deadlines for matters that cannot reasonably be identified until that review has occurred.

There is also a substantial cost component to this process. The Court is necessarily the steward of the public funds required to provide constitutionally adequate representation in this capital prosecution. The defense teams share an obligation to use those funds responsibly while fulfilling their obligation to conduct the thorough investigation required in a case where the Government seeks a sentence of death. Beginning immediately with wholesale professional translation of approximately 1,000 hours of Spanish-language recordings

would impose extraordinary expense. Using machine-assisted transcription and translation to identify the portions requiring professional human review has the potential to materially reduce that expenditure without sacrificing the thoroughness of the defense investigation.

That economy, however, depends upon allowing the process to work. A schedule that requires counsel to complete discovery-dependent litigation before the machine-assisted review can be meaningfully used may force the defense to resort to substantially more human translation simply to comply with an artificial deadline. That would neither expedite the case in a meaningful way nor conserve public resources.

The Court's prior discovery order is also significant in another respect. In addressing the burden created by the extensive production, the Court cited *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003), and noted the Eleventh Circuit's observation that when defendants are provided voluminous discovery and lack sufficient time to sort through it, the appropriate remedy is to request additional time. Doc. 406 at 3–4. The defense is not asking the Court to revisit its ESI ruling. It is asking for the time that the Court's own order recognized may be necessary when a voluminous production must be processed and reviewed by the defense.

**2. The Government's proposed deadlines do not account for the actual work required by the discovery.**

The Government proposed that nonexpert Rule 16 discovery be completed by August 14, 2026, and that all dispositive and nondispositive motions not otherwise separately scheduled be filed by August 28. Doc. 501-1 at 1.

Fourteen days would separate the Government's proposed discovery cutoff from the deadline for virtually every fact-dependent motion not specifically excluded from that provision.

During those fourteen days the defense would be expected to determine whether the production is complete, assess any final production, identify discovery deficiencies, investigate the factual significance of the evidence, consult with clients, identify suppression and Title III issues, assess *Bruton* and severance questions, research those issues, and prepare the corresponding motions. That concern was identified in Mr. Torres-Garcia's prior response. It is even more apparent now that the parties have had the opportunity the Court provided to consider the structure of an appropriate scheduling order.

The difficulty is not cured by the Government's contention that substantial discovery has been available for an extended period. The Court already knows from the ESI litigation that the form and volume of the production required substantial processing. The multimedia evidence presents a separate problem of its own. One thousand hours of primarily Spanish-

language recordings cannot be substantively reviewed simply because the underlying files are physically present in a database.

Nor does the Government's proposal account for later disclosure obligations. Its August 14 provision addresses Rule 16 discovery but states only that *Brady* material will be disclosed "by the time required by the applicable law." Doc. 501-1 at 1. Other disclosure issues—including *Giglio*, cooperator and impeachment material, aggravation evidence, rebuttal evidence, expert source material, and Jencks Act disclosures also affect the timing of corresponding defense investigation and litigation. A schedule should account for the effect of later disclosures rather than create a motions deadline that may later be asserted against an issue the defense could not reasonably have identified when that deadline expired.

Exhibit A addresses that problem directly. It establishes firm deadlines for presently identifiable matters while expressly preserving discovery-dependent litigation until the underlying material can reasonably be reviewed. That is not an exception swallowing the schedule. It is recognition that the purpose of a scheduling order is to organize litigation, not to create forfeitures based upon information counsel did not yet have a reasonable opportunity to understand.

### C. Defendant-Specific Capital Litigation Also Counsels in Favor of a Tiered Schedule.

The discovery is only one reason the Government's proposed schedule is premature. This case also presents substantial defendant-specific capital litigation that cannot responsibly be reduced to a single omnibus expert schedule.

Mr. Torres-Garcia anticipates asserting intellectual disability as a categorical constitutional bar to execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). As previously explained, that litigation will require development of historical and current intellectual-functioning evidence, adaptive-functioning evidence, developmental history, educational and special-education records, collateral witnesses, linguistic and cultural considerations, expert methodology, any Government examination, and appropriate rebuttal.

The Government's proposed order itself acknowledges that this proceeding cannot simply be absorbed into the remainder of its schedule. It requires notice of an *Atkins* claim on January 4, 2027, but then states that if notice is provided, "a separate litigation schedule will be developed." Doc. 501-1 at 3.

That acknowledgment illustrates the problem with fixing every downstream deadline now. If one of the threshold constitutional issues affecting whether the Government may lawfully execute a defendant requires a separate litigation schedule, it makes little sense to assume in advance when

that proceeding will be completed and then establish expert and trial deadlines as though its timing were already known.

This is not unusual in federal capital litigation. In *United States v. Flores-Tavarez*, the court entered a detailed scheduling order through trial but expressly provided that an asserted *Atkins* claim would be governed by a separate litigation schedule and that additional mental-health deadlines could be separately established as necessary. *United States v. Flores-Tavarez*, No. 3:24-cr-133-CVR, Doc. 224, at 4 (D.P.R. May 20, 2026).

Exhibit A takes the more cautious approach of allowing the Court to establish these later schedules when it has the information necessary to do so.

The same concern applies to Rule 12.2. The comprehensive alternative identifies Rule 12.2 as an expected component of the case but provides that its notices, examinations, disclosures, and related litigation will be governed by separate order. That permits the Court to address the distinct requirements of Rule 12.2 on an informed record and to account for the relationship between those proceedings and any intellectual-disability litigation rather than forcing defendant-specific mental-health decisions into a calendar established before those issues have developed.

The Government's proposed order fails to address the substantial complexity and litigation that typically is attendant in federal capital proceedings. They assume certain matters in their 12.2 section are well-settled

that are not. Many issues will need to be litigated all the way down to whether they are entitled to an examination and the attendant restrictions if they are granted an opportunity to examine Mr. Torres-Garcia. If the Court chooses an order that addresses all issues through trial, rather than the tiered approach requested here, that order should address 12.2 timing for:

1. notice under Rule 12.2(a);
2. notice under Rule 12.2(b)(1);
3. notice under Rule 12.2(b)(2);
4. any Government request for an examination under Rule 12.2(c);
5. the scope, conditions, timing, and procedures governing any examination;
6. the scope, conditions, timing, and procedures governing disclosure and handling of examination reports, test data, recordings, notes, and other examination materials;
7. defense and Government mental-health expert disclosures;
8. rebuttal expert disclosures;
9. any motions concerning the admissibility of mental-health expert testimony, including motions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993);
10. any necessary evidentiary hearings; and
11. appropriate procedures governing the disclosure, maintenance, sealing, or restricted use of penalty-phase mental-health evidence under Rule 12.2(c)(2).

### 1. The work performed during the capital authorization process does not make the case ready for a capital trial.

The Government has also relied upon the age of the prosecution and the fact that the defendants have been represented throughout the case. Those

facts establish that counsel have been working on the case. They do not establish that the guilt and penalty phases of a federal capital trial are prepared for adjudication.

Before the Department authorized the death penalty, the defense was simultaneously defending the underlying prosecution and participating in the Department of Justice capital-review process. Mr. Torres-Garcia presented mitigation to the United States Attorney's Office on October 31, 2025, and later to the Department's Capital Case Review Committee on June 8, 2026.

That work was directed to a different decision-maker for a different purpose. The defense sought to provide the Department sufficient information to exercise its discretionary charging authority. A mitigation presentation for that process may properly rely upon reports, summaries, proffers, records, and counsel's representations.

Trial preparation requires more. Evidence presented to a capital jury must be developed into admissible proof. Witnesses must be located, interviewed, corroborated, prepared, and presented for cross-examination. Expert opinions must rest upon complete and reliable foundations. The defense must investigate the Government's aggravation evidence and anticipated rebuttal. The resulting mitigation must then be integrated with the guilt-phase defense and presented in a form understandable to a death-qualified jury.

The Supreme Court has repeatedly emphasized that strategic decisions concerning capital mitigation must follow a sufficiently thorough investigation. See *Wiggins v. Smith*, 539 U.S. 510, 521–24, 527–28 (2003); *Rompilla v. Beard*, 545 U.S. 374, 387–90 (2005); *Williams v. Taylor*, 529 U.S. 362, 395–96 (2000). As stated in the prior filing, the mitigation developed for the Department's authorization decision was not, and was never intended to be, the complete evidentiary presentation required to litigate intellectual disability, withstand adversarial expert scrutiny, and present the penalty case to a jury.

Authorization changed the posture of the case. It did not retroactively convert the work performed for the Department into completed capital-trial preparation.

**2. Recent federal capital cases demonstrate the practicality of a tiered schedule.**

The defense does not suggest that scheduling orders entered by other district courts control the schedule in this case. Each capital prosecution presents its own facts, defendants, discovery, experts, and mitigation. Those orders are nevertheless useful in evaluating whether the tiered structure proposed here is an unusual method of capital case management.

It is not.

In *United States v. Petty*, the District of Colorado entered an "Initial Scheduling Order" addressing discovery and specified capital motions. Rather

than set every remaining deadline, the court expressly provided that after ruling on the defense discovery motions, the parties would again confer to establish a supplemental scheduling order. *United States v. Petty*, No. 1:25-cr-123-CNS, Doc. 205, at 1–2 (D. Colo. Apr. 27, 2026).

In *United States v. Cox*, the Southern District of New York established deadlines for discovery matters, Rule 12 motions, death-penalty motions, and death-penalty discovery motions. It did not set a trial date or trial-submission deadlines. Those matters were reserved for discussion at a later pretrial conference. *United States v. Cox*, No. 7:25-cr-91-VB, Doc. 136 (S.D.N.Y. Apr. 8, 2026).

*United States v. Franklin* is also instructive. There, five defendants faced a capital prosecution that had previously been set for trial in January 2027. The Eastern District of Oklahoma determined that it was unreasonable to expect adequate preparation by that date and continued trial until October 2, 2028. The resulting order established separate rounds of pretrial litigation, left an additional expert-notice deadline for later determination, and required quarterly status reports so the court could monitor the progress of the case. *United States v. Franklin*, No. 24-cr-167-RAW, Doc. 243, at 1–3 (E.D. Okla. Mar. 30, 2026).

These orders demonstrate that a court need not choose between imposing a comprehensive schedule immediately and allowing a capital case to proceed

without meaningful deadlines. A tiered order permits the Court to retain active control of the litigation while setting later deadlines when the information necessary to make those deadlines reliable is available.

That is the approach proposed in Exhibit A.

### D. The Tiered Proposal Better Serves the Court's Case-Management Interests.

The principal virtue of Exhibit A is that it does not require the Court to make predictions that are unnecessary at this point.

Under that proposal, the case continues to move. Discovery review continues. The machine-assisted transcription and translation process proceeds. The Government provides an informational outline of aggravation. Presently identifiable discovery disputes are addressed. Facial and non-discovery-dependent capital motions are litigated. The Court receives periodic status reports. Counsel continues investigation, mitigation development, expert consultation, and trial preparation throughout.

As those matters are completed, the Court will have considerably better information concerning the remaining discovery, the amount of human translation actually required, the scope of intellectual-disability proceedings, the expert issues presented by each defendant, unresolved factual motions, and the amount of preparation remaining before trial. The parties can then propose

the next tier based upon what is known rather than upon assumptions made immediately after authorization.

That is more likely to produce a schedule that can be followed. It also reduces the prospect of repeated motions to extend deadlines because one predicate event has delayed several others.

The tiered proposal therefore does not sacrifice case management in favor of preparation. It is a method of case management that recognizes how the preparation in this particular case must occur.

### E. Alternatively, this Court Must Set a Trial Date that Allows Adequate Time to Prepare a Capital Defense.

Should this Court disagree with the tiered scheduling approach and determine that the entire path to trial should be established now, Exhibit B provides that path. The defense respectfully submits the Government's proposal is not reasonable, as it seeks to compress an extraordinary multi-defendant capital prosecution, with the discovery and defendant-specific issues presented here, into less than eleven months from authorization to jury selection.

#### 1. The Government's June 7, 2027, trial date does not allow reasonable time to prepare this case.

If the Court determines that a trial date should nevertheless be set now, the Government's proposed June 7, 2027, date remains unreasonable.

The Government filed its notice of intent to seek the death penalty against Mr. Torres-Garcia on July 9, 2026. Six days later it moved to set jury selection for June 7, 2027. The Government therefore proposes to move from death notice to selection of a death-qualified jury in less than eleven months.

The proposed intermediate deadlines make the degree of compression more apparent. All motions not separately addressed would be due approximately seven weeks after the death notice—and only 10 days from this Court's hearing on the proposed scheduling orders. Capital constitutional motions would be due in less than three months. Rule 12.2 notice and any *Atkins* claim would be due approximately six months after authorization. Every expert report would be due approximately seven months after authorization. By April 16, 2027, approximately nine months after the death notice, the defense would be required to identify its guilt- and penalty-phase witnesses and exhibits, disclose its proposed mitigating factors, litigate motions in limine, and submit proposed jury instructions for both phases of trial. Jury selection would follow approximately seven weeks later.

The Government estimates that its own case will involve approximately sixty witnesses and consume three to four weeks. It does not estimate the number of defense witnesses or the amount of time required for the defense presentation. Doc. 501 at 5. Yet it asks the Court to establish a schedule that assumes the entire defense investigation, expert case, intellectual-disability

litigation, mitigation case, and trial preparation can be completed on the Government's timetable.

The Government's proposed date also bears little resemblance to the schedules entered in the recent federal capital cases already provided to the Court. In *Petty*, discovery motions were due approximately fifteen months after the death notice and constitutional capital motions approximately eighteen months after the notice. In *Reed*, the corresponding deadlines were approximately sixteen and eighteen months after the death notice. In *Flores-Tavarez*, discovery motions were scheduled approximately fourteen months after the notice and capital motions approximately fifteen months after the notice. *Franklin* scheduled its first substantial round of capital motions approximately eighteen months after the notices.

By comparison, the Government proposes that virtually every major category of pretrial litigation in this case be completed within the first several months after authorization.

**2. If the Court sets trial now, the October 1, 2029, alternative is reasonable and supported by the work the case requires.**

The Defendants have submitted Exhibit B so that the Court has a complete alternative if it determines that a trial date should now be established. Under that proposal, jury selection would begin October 1, 2029.

The date is necessarily later than the Government's proposal because the schedule allows time for the work the Government's schedule largely assumes away. It provides for review of the extensive electronic discovery; machine-assisted transcription and translation of the Spanish-language multimedia evidence; targeted professional translation and verification; discovery litigation; facial capital litigation; intellectual-disability proceedings; discovery-dependent suppression, Title III, *Franks*, *Bruton*, severance, and other motions; expert disclosure and litigation; separately scheduled Rule 12.2 proceedings; jury-selection preparation; motions in limine; jury instructions; and final guilt- and penalty-phase preparation.

The October 2029 date is also not unprecedented when compared with another recent multi-defendant federal capital prosecution. In *Franklin*, death notices were filed in July 2025, and the Eastern District of Oklahoma ultimately set trial for October 2, 2028—approximately thirty-nine months later. In doing so, the court specifically found it unreasonable to expect adequate preparation under the previously established January 2027 date. The interval between the July 9, 2026, death notice in this case and the October 1, 2029, alternative trial date is essentially the same.

Nor is the detailed sequence contained in Exhibit B unusual. In *Flores-Tavarez*, a scheduling order entered in May 2026 set discovery motions for January 2027, capital motions for February 2027, Rule 12.2 proceedings

beginning in July 2027, Government mental-health examinations continuing into January 2028, jury questionnaires in January 2028, and jury selection beginning March 6, 2028.

Again, these schedules do not dictate the result here. They demonstrate that the time proposed by the defense is not inconsistent with the time federal courts have found necessary to prepare other capital cases. More importantly, the record in this case independently supports the requested time.

Exhibit B does not ask for three years in which nothing happens. The proposed order assigns work throughout that period. Its deadlines are intended to allow each stage to inform the next rather than requiring counsel to conduct every aspect of capital preparation simultaneously simply because the Government selected an earlier trial date.

## CONCLUSION

For these reasons, the Defendants respectfully request that the Court adopt the Initial Scheduling and Case-Management Order attached as Exhibit A.

Alternatively, if the Court determines that a comprehensive schedule and firm trial date should now be established, the Defendants request that the Court adopt the Alternative Comprehensive Scheduling and Case-

Management Order attached as Exhibit B and set jury selection for October 1, 2029.

The Defendants further request that the Government's proposed June 7, 2027, trial date and corresponding accelerated scheduling order be rejected.

Respectfully submitted,

/s/ D. Todd Doss

D. Todd Doss, Esq.
Florida Bar No. 0910384
Assistant Federal Defender
Federal Death Penalty Unit
411 Bonneville Avenue
Suite 250
Las Vegas, NV 89101
Telephone: 702-388-6577
E-Mail: Todd_Doss@fd.org

/s/ Roger Weeden

Roger L. Weeden
Florida Bar No. 290106
605 East Robinson Street
Suite 250
Orlando, FL 32803
Telephone: 407-894-9004
E-Mail: rlweeden@aol.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the undersigned electronically filed the foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 17th day of August 2026.

/s/ D. Todd Doss
Attorney for Defendant